**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **ELSIE GUERRA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-20-CV-00536-XR** |
| | § | |
| **CITY OF PLEASANTON,** | § | |
| **INDIVIDUALLY; TRAVIS HALL JR.,** | § | |
| **CURRENT MAYOR OF** | § | |
| **PLEASANTON, TEXAS; JOHNNY** | § | |
| **HUIZAR, CITY MANAGER OF** | § | |
| **PLEASANTON, TEXAS; ROBERT** | § | |
| **(BOBBY) MALDONADO, LEAD** | § | |
| **COUNCIL FOR THE CITY OF** | § | |
| **PLEASANTON, TEXAS** | § | |
| | § | |
| **Defendants.** | § | |

**O R D E R**

On this date, the Court considered Defendants' Motion to Dismiss or, In the Alternative, Motion for More Definite Statement (ECF No. 17). The Court GRANTS IN PART the motion to dismiss as to the federal constitutional claims, with leave for Plaintiff to replead. The Court DENIES the motion as to the state law claims until such time as Plaintiff files an Amended Complaint and the Court determines whether any federal claims will proceed.

**Background**

Plaintiff Elsie Guerra filed her Complaint *in forma pauperis* against Defendants the City of Pleasanton, Travis Hall, Jr. (Mayor), Johnny Huizar (City Manager), Robert "Bobby" Maldonado ("lead counsel for the City of Pleasanton"), and Ben Sifuentes (Plaintiff's former counsel). Plaintiff alleges that she was a municipal judge for the City of Pleasanton Municipal Court and that she exposed "corrupt, criminal, and subversive activities in key government offices mainly inside the City of Pleasanton Texas Offices, Council chambers, and executive

1

session conference rooms located in Pleasanton, Texas." ECF No. 5 at 1. She alleges that Huizar, at the direction of city council, requested Plaintiff to bring in more money by raising quotas and illegally imposing additional fines and citations. She also alleges that she discovered that Huizar owed over $12,000 in back rent to the City, and that she discovered that the city manager (Huizar) and city secretary had falsified their city applications concerning their criminal histories, which would have made them unsuitable for employment. She further alleges that she sought to report "corrupt and criminal acts associated with a long line of aviation grants" and that Defendants sought to block her to "aid and abet the continuation of the misconduct resulting in and that their actions affected interstate and international aviation."

Plaintiff alleges that Defendants terminated her employment contract because "she would not commit crimes as instructed by the City Manager Huizar at the direction of City Council members in their individual capacities." *Id.* It appears she refused to use quotas and impose higher fines to increase revenue as requested, though what the alleged crimes were is not entirely clear. Plaintiff alleges that Defendants conspired to violate federal law "using the Municipal Courts to set quotas and in a requested effort from Johnny Huizar at the direction of city council to bring in more money from fines and all citations issued to the citizens of Pleasanton." *Id.* at 2. She further alleges that Defendants have misused legal process to block her exposure activities of federal violations and illegally requested quotas and higher fines. *Id.* at 1-2. She alleges that her efforts to report matters to government personnel "have been repeatedly blocked through sham legal processes, city council meetings, executive sessions, violations of substantive and procedural due process by people involved in the judicial process." *Id.* at 2.

Plaintiff alleges that Defendants used their official positions with the City to "discriminate and retaliate against Plaintiff because of her age, sex and national origin" and

prevent her lawful right to her retirement and other benefits." She attaches her EEOC right-to-sue letter, but not her EEOC charge to her Complaint. But she also states that "[t]he fact that the Plaintiff has a discrimination EEOC complaint pending is a separate independent matter from these facts and allegations." *Id.* at 1.

Plaintiff alleges sixteen counts, some of which allege violations of § 1983 and § 1985 and federal constitutional rights (violations of the First Amendment rights to free speech and to petition, violations of procedural and substantive due process, and violation of the Fourth Amendment), and some of which allege intentional and negligent state torts. None of the counts alleges a violation of Title VII or the ADEA.

The Magistrate Judge conducted a screening pursuant to 28 U.S.C. § 1915(e) and determined that Plaintiff stated at least one non-frivolous claim to confer subject matter jurisdiction on the Court. Specifically, the Magistrate Judge noted that Plaintiff alleges the City Defendants conspired to effectuate a sham termination process that violated her right to procedural due process in violation of § 1983. The Magistrate Judge also noted that Plaintiff alleged age, sex, and national origin discrimination and attached her EEOC right-to-sue letter to the Complaint, but did not specifically invoke Title VII or the ADEA in her Complaint or assert a count under those statutes, making it unclear whether she was asserting such claims. The Magistrate Judge recommended dismissing the claims against Defendant Ben Sifuentes, and the Court accepted that recommendation.

The remaining Defendants were served and now move to dismiss the claims under Rule 12(b)(6) for failure to state a claim or, alternatively, for a more definite statement under Rule 12(e). The City moves to dismiss on the basis that Plaintiff has not pled an official policy or custom of the City that was a moving force behind the alleged constitutional violations. All

Defendants move to dismiss the due process claims, the § 1985 conspiracy claim, the First Amendment claims, and the state-law claims. In the alternative, Defendants contend that all allegations and counts are too vague for them to prepare proper responses or determine if they are entitled to qualified or official immunity and Defendants thus move for a more definite statement.

### Legal Standard

Rule 8 requires that a plaintiff's pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). That is, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the plaintiff alleges facts that, accepted as true, allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the court must accept the facts in the complaint as true, it will "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that some person has deprived her of a federal right and that the person who has deprived her of that right acted under color of state or territorial law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). To state a claim against a municipality like the City, a plaintiff must allege that the constitutional deprivations were the result of some official policy, practice, or custom of the governmental entity. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The City cannot be held liable for the acts of the individual defendants under a theory of *respondeat superior* or vicarious liability. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214 (5th Cir. 2019). Instead, "the

unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability. *Id.*

There are three ways of establishing a municipal policy for the purposes of *Monell* liability. *Id.* First, a plaintiff can show "written policy statements, ordinances, or regulations." *Id.* at 214-15. Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* at 215. Third, even a single decision may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim." *Id.* "[A] final decisionmaker's adoption of a course of action 'tailored to a particular situation and not intended to control decisions in later situations' may, in some circumstances, give rise to municipal liability under § 1983." *Id.* This requires the "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* Therefore, the "critical question" is generally "to decide who is the final policymaker, which is an issue of state law." *Id.*

A defendant sued in his individual capacity may invoke the defense of qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Section 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims; an assertion of qualified

immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard. *Arnold v. Williams*, No. 19-30555, ___ F.3d ___, ___ (5th Cir. Oct. 23, 2020); *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016). However, because qualified immunity is "not simply immunity from monetary liability" but also "immunity from having to stand trial," there is an interest in qualified immunity entering a lawsuit "at the earliest possible stage of litigation." *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quoting *Brown v. Glossip*, 878 F.2d 871, 874 (5th Cir. 1989)). This interest does not require that the plaintiff's original complaint exceed the short-and-plain-statement standard of Rule 8, however. *Anderson*, 845 F.3d at 589-90. Rather, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). That is, a plaintiff must plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*.

### Analysis

Plaintiff asserts sixteen counts in her Complaint. Count Three is a negligence claim brought only against Sifuentes and has been previously dismissed. As to the remaining fifteen counts, Defendants complain that Plaintiff's Complaint alleges "all Defendants" are responsible for the various violations of her rights, and does not specify which actions were taken by the City or the individual Defendants or which claims are asserted against which Defendant(s). Defendants move to dismiss specific claims but also assert that all claims are so vague that they cannot determine whether they are entitled to immunity or qualified immunity.

Plaintiff's Complaint is often difficult to follow because it is lacking in factual detail and it lacks a clear timeline of events. It fails to specify who committed what acts and at what times.

Plaintiff's counts allege that "all Defendants" violated various constitutional provisions and committed torts. But for Plaintiff to succeed on her claims against the individual Defendants, she must identify the specific acts of each individual because she must demonstrate individual causation. "The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm." *Jones v. Hosemann*, 812 F. App'x 235, 239 (5th Cir. 2020). In identifying specific actions taken by each individual Defendant, Plaintiff should also include dates so that a timeline of events can be discerned. When events occurred and who took the actions complained of are necessary facts for determining causation, and are also relevant to whether the law was clearly established at the time of the defendant's conduct for purposes of qualified immunity.

Although some facts are pled, the Complaint also includes conclusory and vague language about misuse of legal process and "malicious actions" as well as generally using vague and conclusory language to allege claims. In her response to the motion, Plaintiff asserts that "specific facts" and "evidentiary facts" are not required to survive a Rule 12(b)(6) motion, so long as she gives fair notice. While it is true that evidence is not required, nor is heightened fact pleading, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Asserting claims in terms of legal elements and conclusory assertions, without supporting factual allegations, will not suffice. "[T]he pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although Plaintiff asserts that the Complaint identifies the actions of Defendants and how those actions were wrongful, the Complaint does not sufficiently identify whether Plaintiff had a liberty or property interest for

her due process claims, details about Plaintiff's speech/petition activity for which she claims retaliation, which individual Defendants knew of her speech/petition activity and took what actions and at what times, who took the actions that allegedly violated the Fourth Amendment and under what circumstances, and which specific facts she relies upon to support her various claims. This lack of factual detail renders the claims implausible as pled, such that granting the motion to dismiss is appropriate, but with leave to replead. Further, although the individual Defendants have not yet asserted qualified immunity, they undoubtedly will, and requiring Plaintiff to replead to address the noted deficiencies will allow the Court and the Defendants a clearer understanding of Plaintiff's claims so that the case may move forward with minimal delay.

### A. Overview of Plaintiff's Constitutional Claims (Counts One, Two, Five, Seven, Twelve, and Sixteen)

These counts allege violations of Plaintiff's constitutional rights. Count One states that "[a]ll defendants directly and indirectly violated, and aided and abetted the violations, of plaintiff's civil and constitutional rights under color of state law." More specifically, Plaintiff alleges, "Defendants failed to allow Plaintiff an avenue to defend herself after being terminated then falsified the documents to the EEOC investigators stating Plaintiff['s] termination was for job performance but in fact there never was any reprimands or any job issues ever for Plaintiff that were negative and in fact Plaintiff had received a recent raise. Defendants Huizar, Hall, and Maldonado manipulated the system and falsified the information to EEOC violating Plaintiff's rights."

Count Two alleges a conspiracy by all defendants to interfere with Plaintiff's civil rights in violation of § 1985. Plaintiff alleges that Defendants Hall, Huizar, and Maldonado went

outside City rules by making the motion to terminate Plaintiff and Huizar and Maldonado manipulated the system by not allowing Plaintiff the right to defend herself or present her facts and case to council in executive session as they allow other city employees to do.

In Count Five, Plaintiff alleges that "[a]ll defendants" violated her rights under the First and Fifth Amendments to the U.S. Constitution, including the right to petition government, to free speech, to report criminal and treasonous acts in government offices, and the protections against being deprived of liberty and property without and in violation of due process. Defendants acted in conjunction to violate Plaintiff's rights to defend herself against accusations for her job performance." In Count Seven, Plaintiff alleges that "Defendants violated Plaintiff's first amendment right to petition government, as Plaintiff sought to report the criminal activities to government officials and agencies."

In Count Twelve, Plaintiff alleges that "[a]ll defendants knowingly and repeatedly violated plaintiff's right to procedural and substantive due process. Defendants did not allow Plaintiff to defend herself or rebut any claims as to her job employment status or corrective action, which none were identified as Plaintiff was given a raise up to her termination."

In Count Sixteen, Plaintiff alleges that Defendants violated her rights under the Fourth and Fourteenth Amendments. She alleges that "[i]ndividual Defendants violated Plaintiffs Fourteenth Amendment rights to be free from malicious actions without due process when they worked in concert to prevent her from due process and rights afforded to him [*sic*] and any employee of Pleasanton and other damages and losses as described herein entitling [her] to special damages . . . ." She further alleges that "Defendants violated Plaintiff['s] Fourth Amendment rights by seizing her property without a warrant or legal process from her City

Office and placing into the City of Pleasanton Police Storage Vault without a hearing, warrants or any legal process or Plaintiffs' right to privacy."

Viewing all of Plaintiff's allegations and factual background together, it appears that Plaintiff is attempting to assert claims for violation of the First Amendment (right to petition and right to free speech, and retaliation), violation of due process under the Fourteenth Amendment,[1] and violation of the Fourth Amendment (unlawful seizure of property without a warrant). She may also be asserting an equal protection claim. The primary allegations supporting these claims are that she was either prevented from or was retaliated against for reporting "criminal and treasonous" acts and/or for refusing to commit crimes, that she was falsely fired for poor job performance without being given an opportunity to defend herself in executive session or perhaps through other steps, and that her property was taken from her office without a warrant or legal process and placed in a police storage vault. Plaintiff also alleges conspiracy claims under § 1985 but does not specify which section of § 1985 she is invoking.

### B.  Due Process

In Count Five, Plaintiff alleges that all Defendants violated "the protections against being deprived of liberty and property without and in violation of due process" and that defendants "acted in conjunction to violate Plaintiff's rights to defend herself against accusations for her job performance." In Count Twelve, Plaintiff alleges that all defendants violated her right to procedural and substantive due process and that they "did not allow Plaintiff to defend herself or rebut any claims as to her job employment status or corrective action, which none were identified as Plaintiff was given a raise up to her termination." In Count One, Plaintiff also alleges that Defendants failed to allow her an avenue to defend herself after being terminated and falsified

---

[1]  Although Plaintiff invokes the Fifth Amendment, because this case involves state actors rather than federal actors, the applicable amendment for her due process claims is the Fourteenth Amendment.

documents to the EEOC investigators stating she was terminated for poor job performance, though she brings this Count under "Title 42 U.S.C. Section 1983-1985" and does not specify what constitutional provision she believes was violated. In Count Sixteen, Plaintiff invokes the Fourteenth Amendment and alleges that "Individual Defendants violated Plaintiffs [*sic*] Fourteenth Amendment rights to be free from malicious actions without due process when they worked in concert to prevent her from due process and rights afforded to him [*sic*] and any employee of Pleasanton and other damages and losses as described herein entitling him [*sic*] to compensatory and special damages, in amounts to be determined at trial."

The Magistrate Judge concluded that Plaintiff alleges the City Defendants conspired to effectuate a sham termination process that violated her right to procedural due process in violation of § 1983. As discussed below, the Court disagrees that the current pleadings plausibly state such a claim because Plaintiff has not pled a protected property interest in continued employment, and the intracorporate-conspiracy doctrine would bar such a claim. Plaintiff's claims also potentially implicate the type of liberty interest recognized in *Board of Regents v. Roth*, 408 U.S. 564 (1972). The Due Process Clause of the Fourteenth Amendment protects an individual's freedom to work and earn a living in one's community. *Cabrol v. Town of Youngsville*, 106 F.3d 101 (5th Cir. 1997). The Court finds that the current pleadings do not plausibly state such a claim.

<u>*Plaintiff must demonstrate a property interest and that she was denied due process*</u>

A threshold requirement of any due process claim is that the plaintiff demonstrate a property or liberty interest protected by due process. For her procedural due process claim, if Plaintiff has a property interest that entitles her to pre-termination due process, she must then establish that she was terminated without receiving adequate due process. *Parks v. Terrebonne*

11

*Parish Consol. Gov't*, 759 F. App'x 220, 224 (5th Cir. 2019). For her substantive due process claim, Plaintiff must show that she had a property interest in her employment and that her employer's termination of that interest was arbitrary and capricious. *Babin v. Breaux*, 587 F. App'x 105, 112-13 (5th Cir. 2014). Substantive due process is satisfied if the employer acted with a specific exercise of professional judgment in a non-arbitrary and non-capricious manner. *Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992). Defendants contend that Plaintiff's due process claims must fail because she does not assert she had a property right or interest protected by the Fourteenth Amendment. ECF No. 17 at 6-7.

Plaintiff's claims that she was denied procedural and/or substantive due process when she was terminated requires that she demonstrate a property interest in continued employment. *Hughes v. City of Garland*, 204 F.3d 223, 225 (5th Cir. 2000); *Salinas v. Univ. of Tex.-Pan Am.*, 74 F. App'x 311, at *2 (5th Cir. 2003). To have a property interest in continued employment, a plaintiff must "have a legitimate claim of entitlement" to continued employment created and defined "by existing rules or understandings that stem from an independent source such as state law." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). Texas law "presum[es] that employment is at-will, unless that relationship has been expressly altered by contract or by express rules or policies limiting the conditions under which an employee may be terminated." *Gentilello*, 627 F.3d at 544 (quoting *Muncy v. City of Dallas*, 335 F.3d 394, 398 (5th Cir. 2003)). "[A]bsent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery Cty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998).

12

Defendants contend that Plaintiff did not have an employment contract or property interest in continued employment, pointing to the Pleasanton City Charter.[2] The City Charter, of which the Court may take judicial notice, states that "Neither the City Attorney nor the Judge of the Municipal Court shall have any specified term of office, but each shall serve at the will and pleasure of the City Council. Either of those officers may be appointed to or relieved from office by a majority vote of the City Council." ECF no. 17-1. Defendants also provide the Code of Ordinances, which provides, "There shall be appointed by a majority of the City Council, on the nomination of the Mayor or any member of the City Council, a City Manager, a City Secretary, a Municipal Judge or Judges, a City Health Officer, a City Attorney, and other officers as may be required by State Constitution or state law, any of whom may be removed by a majority vote of the City Council. These appointive officers shall serve at the will of the City Council and may be removed, with or without cause, by a majority vote of the City Council, but not less than four (4) affirmative votes for removal." ECF No. 17-2. These public documents indicate that Plaintiff was an at-will employee who did not have an employment contract establishing a property interest in continued employment.

Further, Defendants argue that Plaintiff does not assert sufficient facts to plausibly show the existence of an actual contract. Plaintiff does not make allegations concerning a property interest in continued employment in her due process counts. But she alleges in her state-law breach-of-contract claim that Defendant breached "an employment contract in an appointment as municipal Judge." ECF No. 5 at 7. This allegation is conclusory as to the existence of an employment contract -- Plaintiff does not allege any supporting facts to plausibly establish the existence of an employment contract. She does not allege that she entered into a written or oral

---

[2]   The motion references the Pearsall City Charter, but this was just a typographical error, and does not make the motion "inaccurate and false" as Plaintiff claims.

employment contact with the City, nor does she allege that the city charter, employee manual, or some other policy or source created a contractual right. If Plaintiff alleges a contract, who were the parties to the contract, when was it entered, and what did the contract say about whether Plaintiff was at-will or appointed to a specific term? Absent a property interest, Plaintiff's procedural and substantive due process claims based on her termination must fail.

In addition, it is unclear what process Plaintiff was afforded and what role each of the Defendants played in the alleged denial of due process. It appears that Plaintiff was terminated by a vote of the City Council, which action could be sufficient to establish *Monell* liability for the City if the City Council took such action without providing procedural due process or if it acted in an arbitrary and capricious manner. Plaintiff does not specify what role the individual Defendants may have played in denying her due process, other than the Mayor calling for a vote to terminate her.  Nor does Plaintiff provide facts establishing what process she was given or specifically denied.

If Plaintiff did have a property interest in continued employment, pretermination hearings need not be elaborate; the essential requirements are only notice of the charges and an opportunity to respond, either person or in writing. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985); *Shaper v. City of Huntsville*, 813 F.3d 2d. 709 (5th Cir. 1987). Thus, Plaintiff must specifically allege whether, when, how, and by whom she was given notice of the intent to terminate her and what opportunities Plaintiff was given to respond, either in person or in writing, before her termination. Plaintiff should specify what opportunities she requested (how and from whom), as well as opportunities that may have been available but were not requested. Plaintiff should also specify what procedures were available for her to appeal after her termination, and whether she requested them or not. For any procedures that were provided,

Plaintiff should specify how they were constitutionally deficient. For her substantive due process claim, Plaintiff must specifically allege in what manner she contends her termination was arbitrary and capricious.[3] Plaintiff should specify what role each Defendant played in her termination.

### *Plaintiff must demonstrate a liberty interest for a "stigma-plus" claim*

Even if Plaintiff does not demonstrate a property interest in continued employment, her claims may implicate a liberty interest subject to due process protections. Discharge from public employment under circumstances that put the employee's reputation, honor, or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment to a procedural opportunity to clear one's name. *Rosenstein v. City of Dallas, Tex.*, 876 F.3d 392, 395 (5th Cir. 1989), *reinstated in relevant part*, 901 F.2d 61 (5th Cir. 1990) (*en banc*). To succeed on this § 1983 procedural due process claim, the employee must prove the following: (1) that she was discharged, (2) that defamatory charges were made against her in connection with the discharge, (3) that the charges were false, (4) that no meaningful public hearing was conducted pre-discharge, (5) that the charges were made public, (6) that she requested a hearing in which to clear her name, and (7) that the request was denied. *Id.* In Plaintiff's current Complaint, Plaintiff fails to state such a claim. Further, this claim generally lies against the government employer (here, the City), not a government employee or official. *Sims v. City of Madisonville*, 894 F.3d 632, 642 (5th Cir. 2018). To hold an individual liable, the plaintiff must at a minimum show that the individual had the ability, authority, or influence to deny plaintiff access to a name-clearing hearing, and that he did so. *Id.*

---

[3]  In her response to the motion, Plaintiff asserts that the auditor hired by Huizar to audit Plaintiff's job performance came to the conclusion requested (asking Huizar in an email chain, "what do you want to write"), indicating the audit was not fair and impartial, and the auditor was then hired to fill Plaintiff's position, despite being unqualified. These alleged facts are not in the Complaint.

Discharge from employment, without more, is insufficient to implicate a liberty interest. *Vines v. City of Dallas*, 52 F.3d 1067, at *4 (5th Cir. 1995). A plaintiff must allege that the state actor made "concrete, false assertions of wrongdoing on the part of the plaintiff," not offer mere "opinion" about the employee. *Gordon v. Univ. of Tex. Med. Branch*, 700 F. App'x 350, 351 (5th Cir. 2017). A plaintiff must allege more than merely the stigma of discharge; she must allege more than concern about the impact of the discharge on her general reputation and must allege facts establishing that she was discharged in a manner that creates a false and defamatory impression about her and thus stigmatizes her and forecloses her from other employment opportunities. *Hughes v. City of Garland*, 204 F.3d 223, 227 (5th Cir. 2000). Plaintiff alleges that the reasons given for her termination were false, but she does not allege that they reached the required level of stigma to implicate a protected liberty interest. If she pursues this claim, she must allege sufficient facts to support a plausible finding of stigma and the other elements of the claim and must specify the role of each of the individual Defendants in the alleged violation.

### C.  First Amendment

As to the First Amendment claims, Plaintiff invokes both the right to petition and the right to free speech, as well as asserting retaliation claims, but the exact contours of each claim are hard to determine. In Count Five, Plaintiff alleges that "[a]ll defendants, directly and indirectly, violated plaintiff's rights and protections under the First and Fifth Amendments to the U.S. Constitution, including the right to petition government, to free speech, [and] to report criminal and treasonous acts in government offices." In Count Seven, she alleges that Defendants violated her First Amendment right to petition the government as she sought to report the criminal activities to government officials and agencies.

*Right to Petition*

Among other rights essential to freedom, the First Amendment protects "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const., Amdt. 1. As the Supreme Court has noted, "Petitions are a form of expression, and employees who invoke the Petition Clause in most cases could invoke as well the Speech Clause of the First Amendment." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 382 (2011).

Plaintiff alleges that she sought to make known to the people and the Defendants information on corrupt and criminal activities taking place in government that she discovered during her employment. It is unclear what these activities are or how and when specifically Plaintiff sought to make them known, or to whom. Plaintiff's background facts do include some allegations of wrongdoing, but it is not clear whether all of these form the basis for her petition claims. She alleges that her efforts to report these matters "to governmental personnel who had a duty to receive and act upon the federal crimes have been repeatedly blocked through sham legal processes, city council meetings, executive sessions, violations of substantive and procedural due process by people involved in the judicial process." She alleges that Defendants misused legal process to block the reporting of these "corrupt, criminal, and subversive activities," but she does not specify what the "legal process" was. She alleges that "[s]everal corrupt schemes using legal process [accompanied by violations of substantive and procedural state and federal law and criminal obstruction of justice and retaliation] by members of the legal community were perpetrated against Guerra during the past two years in attempt to block his [*sic*] reporting of these criminal activities." She alleges that she contacted "the Texas Ranger," who was going to consult with the District Attorney's office, but the City officials subverted this attempt (without specifying how) and Plaintiff was advised her complaints were a federal offense. She also alleges

that Defendants used their positions to terminate her because of her knowledge and discriminated against her because she was in a position to retire within months with full benefits from the City. She states, "Similar issues with past employees who were male there was nothing done to the employee, but Plaintiffs [*sic*] used their positions to discriminate and retaliate against Plaintiff because of her age, sex, and national origin."

Plaintiff does not allege sufficient facts indicating how she was denied the right to petition or who specifically denied her the right to petition. Plaintiff must specifically identify what person or entity she attempted to petition, what information she sought to provide them, who denied her the right to petition and how, and when specifically they denied her that right.

To the extent Plaintiff may be claiming that the refusal to allow her to defend herself in executive session against charges of improper job performance was a denial of her right to petition or her right to free speech under the First Amendment, that argument is likely foreclosed by *Harmon v. Dallas County, Texas*, 927 F.3d 884, 894-95 (5th Cir. 2019) because she would not be speaking as a citizen -- "an employee's grievance from termination will not ordinarily constitute a matter of public concern." Aside from not being a matter of public concern, Defendants correctly argue that this claim appears to be more properly brought under the due process clause. *Id.*

Plaintiff appears to be attempting to assert an equal protection variant of this claim as well, alleging that she was not allowed to speak for herself in executive session when "others" were allowed. But she does not allege that "two of more classifications of similarly situated persons were treated differently" with respect to being allowed to speak in executive session.[4] *Id.*

---

[4]  She states, "Similar issues with past employees who were male there was nothing done to the employee, but Plaintiffs [sic] used their positions to discriminate and retaliate against Plaintiff because of her age, sex, and national origin." But this allegation is conclusory and does not specially relate to being denied an opportunity to speak in executive session. It appears to be more part of her retaliation claim.

Plaintiff must specify who had the authority to allow her to speak, who denied her the right, who else was allegedly permitted to speak under similar circumstances, and how those circumstances were similar.[5]

*First Amendment retaliation*

Plaintiff alleges that she was retaliated against for her speech by Defendants "attacking her exercise of this right through a sham and not allowing Plaintiff the right to speak for herself in executive session." She also alleges that she was retaliated against (terminated and possibly by unspecified use of legal process) for not committing crimes as instructed and to subvert her attempts to report criminal behavior and illegal requests.

The framework used to govern retaliation claims by public employees under the First Amendment Free Speech Clause and the Petition Clause is the same. *Harmon v. Dallas Cty., Tex.*, 294 F. Supp. 3d 548 (N.D. Tex. 2018), *aff'd*, 927 F.3d 834 (5th Cir. 2019). To state a retaliation claim, a plaintiff must allege facts that show: "(1) the plaintiff suffered an adverse employment decision, (2) the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct." *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004) (*en banc*); *accord Haverda v. Hays Cty.*, 723 F.3d 586, 591 (5th Cir. 2013).[6] Further, a plaintiff who is a public employee must show that she spoke as a

---

[5]  Plaintiff does allege in her response to the motion to dismiss that City Manager Huizar and his assistant Andres Aguirre did not submit applications for their current positions and falsified their original applications by stating they had no criminal histories when in fact they had numerous DWI arrests, and they were "allowed to sit in executive session to address their own complaints of lying on their applications to plead their case as well as all other employees who had been terminated previously setting a precedence to be allowed in executive session." ECF No. 19 at 6. But these allegations are not in the Complaint. Further, Plaintiff must show these employees were similarly situated to her.

[6]  If the plaintiff makes such a showing, the employer may still avoid liability if it can "show[ ] by a preponderance of the evidence that it would have reached the same decision ... even in the absence of the protected conduct." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *accord Beattie v. Madison Cty. Sch. Dist.*,

citizen, not as an employee pursuant to her official duties. As the Fifth Circuit recently explained:

> Although reporting municipal corruption undoubtedly constitutes speech on a matter of public concern, *Garcetti* instructs to "first decide whether the plaintiff was speaking as a citizen disassociated with his public duties, or whether the plaintiff was speaking in furtherance of the duties of his or her public employment." When public employees engage in speech pursuant to their official duties, they "are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." In 2014, the Supreme Court "emphasized that '[t]he critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."

*Harmon v. Dallas Cty., Tex.*, 927 F.3d 884, 893 (5th Cir. 2019) (citations omitted).

With regard to Plaintiff's claim that she was retaliated against to subvert her attempts to report criminal behavior and the improper requests, she must establish that her speech was made as a citizen, and not within the scope of her duties. Plaintiff's Complaint alludes to various forms of allegedly protected speech, and does not specify to whom the speech was made or whether it forms the basis of her retaliation claim. Plaintiff must specify exactly what speech or petition activity she contends she was retaliated against for, to whom she spoke or reported the alleged criminal or improper conduct (what specific information did she provide to what specific person or entity) and when, who knew of the speech or activity and when, who played a role in her termination based on this speech or activity, and what that role was. If the City Council voted to terminate her based on protected speech, that may be sufficient for *Monell* liability. With regard to individual Defendants who were not final decisionmakers, Plaintiff must demonstrate an affirmative causal link between the individual's conduct and the final decisionmaker's decision. *Sims v. City of Madisonville*, 894 F.3d 632 (5th Cir. 2018) (citing *Jett v. Dallas Indep. Sch. Dist.*,

---

254 F.3d 595, 601 (5th Cir. 2001). The Fifth Circuit clarified in June 2018 that someone who is not a final decisionmaker may still be liable for First Amendment retaliation. *Sims v. City of Madisonville*, 894 F.3d 632 (5th Cir. 2018). Alleged retaliatory acts by non-final-decisionmakers before that time would be protected by qualified immunity because the law was not clearly established.

798 F.2d 748, 758 (5th Cir. 1986), *aff'd in part, remanded in part on other grounds*, 491 U.S. 701 (1989)).

With regard to Plaintiff's claim that she was retaliated against for not committing crimes (refusing to impose illegal fines and quotas), Plaintiff must establish that her refusal to commit crimes was protected speech. If her objections to quotas or fines was made in the course of her employment duties, such as in part of internal discussions about operations or policy, they may not amount to protected speech. *See Paske v. Fitzgerald*, 785 F.3d 977, 984 (5th Cir. 2015). To this end, Plaintiff must specify what she was asked to do, by whom, how it was a crime, and how her refusal amounts to speech as a citizen on a matter of public concern.[7] She must also specify who was aware of her refusal and what role they played in her termination.

Plaintiff also makes vague references to use of legal processes against her and possible other forms of retaliation besides termination. If Plaintiff is alleging that she was retaliated against in ways other than being terminated, she needs to make that clear.

### D. Conspiracy to Interfere with Civil Rights under § 1985 (Count Two)

In Count Two, Plaintiff asserts a claim that "[a]ll defendants violated Title 42 U.S.C. Section 1985, by entering into a conspiracy to violate plaintiff's civil rights. Defendants Hall, Huizar and Maldonado went outside the adopted rules of the City of Pleasanton and acted as individual[s] by making the motion to terminate Plaintiff when Hall had no right to make that motion, then Huizar and Maldonado who is the legal counsel for the City manipulated the system by not allowing Plaintiff the right to defend herself or present her facts and case to council in executive session as they allow other city employees to do."

---

[7]  At least one district court has held that a public employee's refusal to engage in unlawful or unethical activity is not speech protected by the First Amendment. *Boisseau v. Town of Walls, Miss.*, 138 F. Supp. 3d 792, 292-98 (N.D. Miss. 2015). This claim is more likely appropriately addressed via a due process framework.

As noted, Plaintiff does not specify which subsection of § 1985 she is asserting claims under. Section 1985(1) provides a remedy for a conspiracy by two or more persons to "interrupt, hinder, or impede ... the discharge of [a United States officer's] official duties." Section 1985(2) makes actionable a conspiracy to obstruct justice by conspiring to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully. To succeed on a witness intimidation claim under Section 1985(2), a plaintiff must prove that (1) a conspiracy existed, (2) to deter a witness by force, intimidation, or threat from attending federal court or testifying freely in a matter there pending, which (3) caused injury to person or property. Plaintiff does not appear to state a claim under sections (1) or (2) of § 1985. If she is intending to assert such claim, she needs to make that clear and plead the necessary elements.

Section 1985(3) provides a cause of action for a conspiracy by two or more persons to deprive one of "equal protection of the laws, or of equal privileges and immunities under the laws." Plaintiff must prove the following elements for a claim under § 1985(3): (1) a conspiracy of two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or deprives her of a right or privilege of a United States citizen. *See Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994). Defendants move to dismiss this claim because there is no allegation that the conspirators were motived by racial or class-based animus.

The Court finds that the intracorporate-conspiracy doctrine would apply to the extent Plaintiff is alleging that Hall, Huizar, and Maldonado conspired. Employees of an entity are not considered to be "persons" separate from such entity for conspiracy purposes. *See Hilliard v.*

22

*Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). The Fifth Circuit and district courts have applied the doctrine in § 1985 claims against multiple defendants employed by the same governmental entity. *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir. 1977); *McCracken v. Hardberger*, No. SA-06-CV-988-XR, 2008 WL 219576, at *4 (W.D. Tex. Jan. 25, 2008) (citing *Wright v. Illinois Dept. of Children & Family Servs.*, 40 F.3d 1492 (7th Cir. 1994))(citing numerous cases that hold the employees and agents of a governmental agency are members of the "same collective entity" and therefore are not separate "persons" who may form a conspiracy within the meaning of § 1985). *See also Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) (division in courts of appeals over application of intracorporate-conspiracy doctrine to § 1985 conspiracies would entitle defendants to qualified immunity). To the extent Plaintiff is attempting to assert a conspiracy claim under § 1983, the intra-corporate conspiracy doctrine would block such a claim as well.

### E.  Fourth Amendment Claim

Defendants complain that the claims are vague and improperly allege that "all Defendants" committed the violation. The Court agrees that this claim lacks factual specificity making it implausible as pled. It is impossible to tell from the allegations which Defendant(s), if any, may have liability. Plaintiff is given leave to replead to allege facts concerning the circumstances surrounding this claim, including who took the property and with what purpose (was it law enforcement, was it part of a criminal investigation/charge), what property was taken, and when was it taken.

### F.  Title VII / ADEA claims

As noted, Plaintiff does not include a count for violation of Title VII or the ADEA in her sixteen counts. She also states that "[t]he fact that the Plaintiff has a discrimination EEOC

complaint pending is a separate independent matter from these facts and allegations" in her "general allegations and summary of lawsuit." ECF No. 5 at 1.

In response to the motion to dismiss, Plaintiff states that her Complaint "describes in more than necessary detail the facts that the Defendant have violated the laws, rules and regulations regarding Title VII of the Civil Rights Act of 1964." ECF No. 19 para. 7. She states that the Complaint "describes in more than necessary detail the facts that the Defendants engaged in discriminatory and retaliatory conduct against Plaintiff . . . " and that she has "alleged actual harm and injury in paragraphs 25, 26, 27, 28, 29, 46 and III Applicable Legal Standards, IV Racial Discrimination" in "Amended Petition lawfully filed on November 13, 2018 by Plaintiff." *Id.* para. 8, 12. As Defendants point out, Plaintiff's Complaint does not contain numbered paragraphs and was not filed on November 13, 2018 (but in 2020), making this reference confusing.

Defendants construe this language in the response as Plaintiff arguing that she has stated and is pursuing a Title VII claim. The Court finds the response vague and unclear on whether Plaintiff is arguing that she asserted a Title VII claim in her Original Complaint. The Court further finds that because of the statement that the EEOC claim is a "separate independent matter" and the fact that Plaintiff does not include in any count a violation of Title VII or the ADEA, the Complaint does not give fair notice of such claims. Thus, at this time, the Court does not construe the Complaint as asserting any claims under Title VII and/or the ADEA. If Plaintiff intends to pursue such claims, she must file a motion for leave to amend her Complaint to include such a claim, explaining why it was not included in the Original Complaint.[8]

---

[8]  The Court will address the timeliness of any Title VII/ADEA claim in an amended complaint if and when Plaintiff files a motion for leave to include such a claim.

**Conclusion**

Defendants' Motion to Dismiss (ECF No. 17) is GRANTED IN PART as to Plaintiff's federal claims, but Plaintiff is given leave to replead to address the deficiencies noted herein as to her federal claims. The Court DENIES IN PART the motion with regard to Plaintiff's state-law claims until Plaintiff files an Amended Complaint and the Court can determine whether any federal claims remain. Plaintiff shall file the Amended Complaint no later than **December 28, 2020**. Failure to file a timely Amended Complaint will result in dismissal of all federal claims and of this lawsuit.

Plaintiff's second motion for appointment of counsel (ECF No. 26) is DENIED for the reasons previously given by the Magistrate Judge when denying Plaintiff's first motion.

SIGNED November 24, 2020.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE