IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ELSIE GUERRA,<br>　　　*Plaintiff*<br><br>-vs-<br><br>CITY OF PLEASANTON,<br>INDIVIDUALLY; TRAVIS HALL JR.,<br>CURRENT MAYOR OF PLEASANTON,<br>TEXAS; JOHNNY HUIZAR, CITY<br>MANAGER OF PLEASANTON, TEXAS;<br>ROBERT (BOBBY) MALDONADO,<br>LEAD COUNCIL FOR THE CITY OF<br>PLEASANTON, TEXAS,<br>　　　*Defendants* | SA-20-CV-00536-XR |

## ORDER

On this date, the Court considered Plaintiff's Amended Complaint (docket no. 29)[1] and Defendants' Amended Motion to Dismiss (docket no. 30). After careful consideration, Defendants' motion is GRANTED.

## BACKGROUND

Plaintiff, Elsie Guerra, filed her Original Complaint on May 12, 2020 alleging sixteen counts of federal and state-law claims. Docket no. 5. On September 15, 2020, Defendants filed a Motion to Dismiss, or In the Alternative, a Motion for More Definite Statement, arguing that Plaintiff's complaint failed to state a claim upon which relief could be granted. Docket no. 17 ¶ 1. This Court granted Defendants' motion, in part, with regard to Plaintiff's federal claims, but gave Plaintiff leave to replead her claims to correct the noted deficiencies. Docket no. 28 at 25.

---

[1] Plaintiff filed a flash drive with her Amended Complaint, which was an audio recording of a conversation she had. The flash drive was misplaced en route from the Clerk's office to chambers, and thus the Court has not reviewed it. But even if it contains the information that Plaintiff alleges, the Court finds it would not change the outcome of this order.

This Court denied, in part, Defendants' motion regarding Plaintiff's state-law claims until the Court reviewed Plaintiff's Amended Complaint to determine whether any claims arising under federal law remained. *Id.* at 25. In addition, this Court found that because Plaintiff failed to include a Title VII or ADEA violation in any of her sixteen counts and stated that the EEOC complaint was a "separate independent matter," the Complaint failed to give fair notice of a Title VII or ADEA claim. *Id.* at 24. Plaintiff was instructed that in order to pursue claims under Title VII or the ADEA, "she must file a motion for leave to amend her Complaint to include such a claim, explaining why it was not included in the Original Complaint." *Id.* at 24.

Plaintiff failed to file a motion for leave to amend her Complaint to include the Title VII or ADEA claims, but Plaintiff did timely file her Amended Complaint on December 28, 2020. Docket no. 29. In her Amended Complaint, Plaintiff now alleges only two counts and no longer asserts claims against Robert Maldonado. *Id.* In Count I, Plaintiff alleges violations of Title VII, and in Count II, Plaintiff alleges violations under 42 U.S.C. § 1983 and "pattern and practice failure to train." Docket no. 29 ¶ 75–84. Although paragraph 10 of the Amended Complaint asserts that this Court has supplemental jurisdiction over Plaintiff's state-law claims against Hall and Huizar, the Amended Complaint does not assert any state-law claims. Defendants filed their Amended Motion to Dismiss on January 11, 2021. Docket no. 30. The Court addresses the sufficiency of Plaintiff's Amended Complaint below.

## DISCUSSION

### I.   Legal Standard

A pleading requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A well-pleaded complaint does not require "detailed factual allegations," but the facts alleged "must be enough to raise a right to relief above the

speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). Although a court is bound to accept the facts in a well-pleaded complaint as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

"Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of 'any rights, privileges, or immunities secured by the Constitution and laws.'" *Goodman v. Harris Cnty.*, 571 F.3d 388, 394–95 (5th Cir. 2009) (quoting 42 U.S.C. § 1983). Claims arising under Section 1983 can be brought against a person "in their individual or official capacity, or against a governmental unit." *Id.* at 395. A suit against a person in their individual capacity requires only a showing that the official deprived the plaintiff of a federal right under state law. *Id.* at 395. "In such a suit, the official may 'assert personal immunity defenses' such as qualified immunity." *Id.* at 395 (citing *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). Qualified immunity protects government officials from liability while acting in their official capacity unless their conduct clearly violates statutory or constitutional law. *Id.* at 395. To overcome a qualified immunity defense, a plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Plaintiff's allegations concerning qualified immunity are subject to the same pleading standards as required under Rule 8. *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016).

An individual in their official capacity or a municipality, like a city, can be sued under Section 1983, but they cannot be held liable under the doctrine of vicarious liability. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 218 (5th Cir. 2019). "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Id.* at 214. A plaintiff must show three elements to establish a claim against a municipality: "(1) an official policy (2) promulgated by the municipal policymaker (3) that was the moving force behind the violation of a constitutional right." *Id.* at 214 (quoting *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 395 (5th Cir. 2017), *as revised* (Mar. 31, 2017)) (internal quotations omitted). A plaintiff can establish a municipality's policy in three ways (1) "written policy statements, ordinances, or regulations," (2) "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy," and (3) in "rare circumstances" a singular decision may suffice to establish a municipal policy "when the official or entity possessing 'final policymaking authority' for an action 'performs the specific act that forms the basis of the § 1983 claim.'" *Id.* at 215.

## II.   Analysis

### a.   Count I - Violation of Title VII

In the Amended Complaint, Plaintiff asserts claims under Title VII against the City of Pleasanton, and its officers, agents, servants, employees, or representatives for gender discrimination, retaliation, and national origin discrimination. Docket no. 29 ¶ 75–78. As noted, this Court previously found that Plaintiff failed to give fair notice that she was asserting any claims under Title VII in the Original Complaint. Plaintiff states, in the Amended Complaint, that the reasons for failure to include these claims in her Original Complaint are that Ben Sifuentes,

4

Plaintiff's prior attorney, misrepresented Plaintiff, failed to submit relevant documents to facilitate the EEOC's investigation, failed to advise Plaintiff of the EEOC's appeal process, and failed to share information and documentation given by the EEOC. *Id.* ¶ 72–74. However, Plaintiff was aware of all of these facts when she filed the original Complaint.

Further, this Court stated that "[i]f Plaintiff intends to pursue such claims, she must file a motion for leave to amend her Complaint to include such a claim . . . ." Docket no. 28 at 24. Plaintiff failed to seek leave to amend her Complaint to include claims under Title VII. "[F]ailing to request leave from the court when leave is required makes a pleading more than technically deficient. The failure to obtain leave results in an amended complaint having no legal effect." *Golden v. Gen. Motors LLC*, No. 1:17-CV-606-RP, 2017 WL 5633465 (W.D. Tex. Nov. 22, 2017) (quoting *U.S. ex rel. Mathews v. HealthSouth Corp.*, 332 F.3d 293, 296 (5th Cir. 2003)). Leave was required to add the Title VII claims and Plaintiff failed to request and obtain it; therefore, the Title VII claim is not properly included in the Amended Complaint.

Even if the Court were to imply a motion for leave to include the Title VII claims, the motion would be denied as futile. The Title VII claims against the individual defendants Huizar and Hall are improper because Title VII liability applies only to employers, not individual supervisors. As to the Title VII claims against the City, Plaintiff fails to allege sufficient facts to plausibly state a claim to relief under Title VII against the City. Plaintiff does not allege facts from which it can be plausibly concluded that she was terminated because of her gender or national origin, or that she was retaliated against for engaging in protected activity under Title VII.

First, Plaintiff alleges no facts from which it can plausibly be inferred that she was terminated because of her gender of national origin. The fact that Huizar yelled at her does not establish discrimination based on gender or national origin. Nor does the fact that four of six city

5

council members were white establish national original discrimination.  Plaintiff fails to allege any facts from which it can plausibly be inferred that Huizar, Hall, or any City Council member was motivated by Plaintiff's gender or national origin.

Second, Plaintiff fails to allege that she engaged in protected conduct to support a Title VII retaliation claim.  Her complaints about being yelled at by Huizar or her statements to Huizar that she was being subject to a hostile work environment are not protected conduct under Title VII because Plaintiff did not assert that she was being yelled at or subjected to a hostile work environment because of her gender or national origin. *See Harris–Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 916 (5th Cir. 2006) (finding no protected activity where plaintiff's complaints to her employer did not allege that she was treated unfairly due to her race or gender); *Moore v. United Parcel Serv., Inc.*, 150 F. App'x 315, 319 (5th Cir. 2005) (finding that plaintiff's grievance was not a protected activity because it did not protest racial discrimination or any other unlawful employment practice under Title VII); *Evans v. Tex. Dept. of Transp.*, 547 F. Supp. 2d 626, 654 (E.D. Tex. 2007) (employee did not engage in statutorily protected activity where she complained of a purportedly hostile work environment but did not suggest the conduct was related to race, sex, age, disability, or other characteristic protected by Title VII). Title VII does not create a general civility code in the workplace and does not prevent all verbal abuse. While Plaintiff may have found Huizar's behavior rude or offensive, there is no indication that it implicated Title VII.  Thus, the Court finds that Plaintiff should not be given leave to amend to assert a Title VII claim even if a motion were implied.

    **b. Count II – "Violation of Civil Right 42 U.S.C. Section 1983 and Pattern and Practice Failure to Train"**

Plaintiff alleges that "Hall and Huizar violated Plaintiff's constitutional and statutory right to be free of termination manufactured without any cause." Docket no. 29 ¶ 81. But there is no freestanding constitutional right to be free from termination without cause. Rather, as the Court previously explained, it is presumed that employment in Texas is at-will, and unless that relationship has been altered by contract or policies limiting the conditions under which an employee may be terminated, the employer may terminate the employment relationship without cause. A constitutional claim may arise under the Due Process Clause only if the plaintiff was not afforded due process when being deprived of a protected property or liberty interest in her employment.

To establish a denial of procedural or substantive due process, Plaintiff must therefore show a property interest in maintaining her employment. *Hughes v. City of Garland*, 204 F.3d 223, 225 (5th Cir. 2000); *Salinas v. Univ. of Tex.-Pan Am.*, 74 F. App'x 311, at *2 (5th Cir. 2003). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577(1972). Plaintiff must demonstrate "a legitimate claim of entitlement" to a property interest in continued employment created by an independent source. *Id.* at 577. "A causal basis for termination is generally not needed in Texas, where employment is at-will unless a contract, statute, or other authority overrides that presumption." *Stem v. Gomez*, 813 F.3d 205, 211–12 (5th Cir. 2016). "[A]bsent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998).

Both the Pleasanton City Charter and the Code of Ordinances establish that Plaintiff is an at-will employee, and Plaintiff has produced no facts that demonstrate a legitimate claim of entitlement to a property interest in continued employment. Docket no. 17-1 and 17-2. Because Plaintiff has failed to establish a property interest in continued employment, her claim to a "constitutional and statutory right to be free of termination manufactured without cause" fails. Docket no. 29 ¶ 81.

Plaintiff also alleges that her constitutional and statutory rights were violated by Hall and Huizar's use of the executive session process, because it allowed some employees to discuss their pending termination and others such as Plaintiff no access or avenue to discuss her termination. *Id.* ¶ 80. However, this claim fails because Plaintiff has not shown a property interest in continued employment that would entitle her to a pretermination hearing.

If Plaintiff is attempting to argue an equal protection claim, because "some employees" were allowed the ability to speak at the executive session while "others such as Plaintiff" were not, this claim fails as well. *Id.* ¶ 80. A "class of one" equal protection claim is not viable in the context of public employment. *Engquist v. Oregon Dep't of Ag.*, 553 U.S. 591, 606 (2008) ("[R]ecognition of a class-of-one theory of equal protection in the public employment context—that is, a claim that the State treated an employee differently from others for a bad reason, or for no reason at all—is simply contrary to the concept of at-will employment.").

Further, Plaintiff failed to establish that "two or more classifications of similarly situated persons were treated differently" regarding the ability to speak at the executive session. *Harmon v. Dallas Cnty., Tex.*, 927 F.3d 884, 894-95 (5th Cir. 2019). Plaintiff alleges that she requested and was denied the opportunity to speak by Hall and Huizar, and Plaintiff alleges that Huizar and Aguirre were permitted to speak at executive session to respond to complaints that they falsified

past employment applications by omitting their criminal convictions, but Plaintiff fails to specify how Huizar and Aguirre were similarly situated to her. Docket no. 29 ¶ 46. On the face of her allegations, Plaintiff and Huizar and Aguirre were defending against different charges (falsifying a past employment application versus job performance), and Plaintiff does not state who the decisionmakers were that permitted Huizar and Aguirre to speak in executive session or whether they were the same ones that denied her that opportunity. Further, Plaintiff fails to establish that Huizar and Aguirre were also at-will employees. Moreover, she fails to allege facts that plausibly demonstrate that she was denied the opportunity to speak in executive session because of her membership in a protected class. Conclusory allegations that disparate treatment was based on gender or national origin will not suffice.

Further, to the extent Plaintiff may be claiming a denial of a liberty interest under a stigma-plus theory through her allegation that Defendants told the Texas Workforce Commission that she did not work the fourth quarter of 2017, which put her in an adverse position with tax reporting that painted her in a bad light, this is not the type of defamatory charge made in connection with a discharge that will support such a claim. Plaintiff fails to plausibly allege a stigma-plus due process claim.

Although Plaintiff contends that her job performance was satisfactory and that the audit was manufactured to justify her termination, not every wrong is actionable as a constitutional claim. This Court does not act as an overseer of allegedly wrongful employment decisions. In addition, Plaintiff's complaints that Hall should have stepped down from city council once he submitted paperwork to run for Mayor and was not sworn in as Mayor at the time he made the motion to terminate her are not cognizable as constitutional claims. Whether city officials

allegedly violated the city charter in this regard is not the concern of a federal court, and such violations do not make her termination "void" as a matter of federal law.

Last, to the extent Plaintiff re-alleges her claims that she attempted to report criminal wrongdoing but was prevented in violation of the First Amendment, her Amended Complaint fails to remedy all the deficiencies this Court outlined in its prior Order. To establish a First Amendment retaliation claim, a public employee must show that (1) they "suffered an adverse employment decision," (2) their "speech involved a matter of public concern," (3) their "interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct." *Culbertson v. Lykos*, 790 F.3d 608, 617 (5th Cir. 2015) (quoting *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004) (en banc)).

Plaintiff has established an adverse employment decision by showing her termination as a Municipal Judge. However, before moving on to the remaining elements, a court must determine "whether the plaintiff was speaking 'as a citizen' or as part of her public job. Only when government penalizes speech that a plaintiff utters 'as a citizen' must the court consider the balance of public and private interests." *Davis v. Mckinney*, 518 F.3d 304, 312 (5th Cir. 2008) (quoting *Mills v. City of Evansville*, 452 F.3d 646, 647–48 (7th Cir. 2006)). The determination of whether Plaintiff was speaking as a citizen or as an employee as part of her official duties is a question of fact, and Plaintiff has failed to sufficiently plead any of the necessary facts to establish a plausible recovery. As this Court previously noted, "Plaintiff must specify exactly what speech or petition activity she contends she was retaliated against for, to whom she spoke or reported the alleged criminal or improper conduct (what specific information did she provide to what specific person or entity) and when . . . ." Docket no. 28 at 20.

Regarding the First Amendment claim that Plaintiff was retaliated against for attempting to report criminal activities, Plaintiff's Amended Complaint fails to provide any of the required information. Plaintiff states that she contacted "the Texas Ranger," but fails to state what information she reported, when, and who retaliated against her because of the speech. Docket no. 29 ¶ 67. Plaintiff states "corrupt schemes using legal process by member of the legal community were perpetrated against Guerra . . . in attempts to block his [sic] reporting of these criminal activities." *Id.* ¶ 65. These allegations are insufficient to determine whether Plaintiff's speech was made as a governmental employee or as a citizen.

With regard to the First Amendment claim that Plaintiff was retaliated against for refusing to commit crimes by imposing "illegal fines and commit fraud upon citizens of Pleasanton to raise more money for the city general fund," Plaintiff similarly fails to establish that her speech was protected speech. *Id.* ¶ 69. Plaintiff failed to state who asked her to commit these activities, how these activities were illegal, and how the refusal to commit these crimes constitutes speech as a citizen rather than as a governmental employee pursuant to her job duties. The refusal to impose fines is likely not "speech that is 'the kind of activity engaged in by citizens who do not work for the government'" and it is more in line with "activities undertaken in the course of performing one's job . . . pursuant to official duties." *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421–24 (2006)). If Plaintiff's refusal was made pursuant to her official duties, that speech is not protected by the First Amendment. *Id.* at 692.

Even if the Court were to assume that Plaintiff's speech was made as a public citizen, Plaintiff failed to correct other the deficiencies this Court noted in her original complaint. Plaintiff's Complaint fails to establish that her speech was a matter of public concern, that her

11

speech outweighed the government's interest in efficiency, or how her protected speech motivated her termination. Therefore, Plaintiff's First Amendment claims must fail.

*Pattern and Practice*

Local governing bodies, "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)). The requirement of deliberate indifference requires the plaintiff to show "a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'" *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). A mere allegation under the doctrine of respondeat superior is insufficient; plaintiff must establish that the supervisor's conduct resulted in a denial of plaintiff's constitutional rights. *Id.*

Plaintiff asserts that her termination resulted from the City of Pleasanton's pattern and practice of allowing untrained employees "to investigate matters outside the expertise of subordinates." Docket no. 29 ¶ 82. Plaintiff "must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984). Plaintiff fails to identify any policy officially adopted by the City to allow untrained employees to investigate particular matters or how that policy or failure to train was the moving force behind a constitutional violation.

Plaintiff alleges that "Hall and Huizar have no training, experience, or policy when dealing with audits and termination employees as a result of the audit." Docket no. 29 ¶ 81. Even if Hall and Huizar had no training and experience in dealing with audits and terminating employees as a result of the audit, the alleged "pattern and practice of permitting untrained City of Pleasanton Employees, Hall and Huizar acting outside any capacity to investigate matters outside the expertise of subordinates" does not state a constitutional claim as such alleged "pattern and practice" was not the moving force behind any constitutional violation. Similarly, without a due process or other constitutional violation, any alleged "negligent supervision" of Hall and Huizar by the City was not the moving force behind any constitutional violation.

## Conclusion

Plaintiff failed to establish a property interest in continued employment, failed to move for leave to add Title VII claims to her complaint, and failed to plead facts that show a plausible basis for recovery. Defendants' Amended Motion to Dismiss (docket no. 30) is **GRANTED** as discussed herein and Plaintiff's federal claims against Defendants are **DISMISSED** with prejudice. To the extent Plaintiff is still seeking to pursue state-law claims, the Court declines to exercise supplemental jurisdiction over such claims and they are DISMISSED WITHOUT PREJUDICE. The Clerk shall enter a Judgment pursuant to Rule 58 and shall CLOSE this case.

It is so **ORDERED**.

SIGNED this 6th day of April, 2021.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE